Thank you, Your Honor. I can see each of you, so I do not see a little picture of myself, but I assume my audio and video are coming through for you. We're hearing you, Nancy. Thank you, and I'd like to reserve three minutes for rebuttal, if that's acceptable. Obviously, these matters have been briefed in some detail, and there's a lot to address in 15 minutes, so let me just try to focus on a couple of issues. As we spelled out, Section 425.16 applies to a claim for relief if it arises out of protected activity, and here I don't believe there's any dispute that filing a federal lawsuit is protected activity. It's a petition in the judicial branch. And accordingly, where the threshold issue gets decided is what does it mean for a claim to arise out of protected activity. Thankfully, there's been a large amount of law on that issue, and the standard is essentially is the protected activity material to or merely incidental to the claims being asserted. And here, with respect to Langan's first counterclaim for relief, it's a cause of action for tortious breach of the implied covenant of good faith and fair dealing, is plainly and centrally premised upon our allies' rescission and recoupment lawsuit, this action. And therefore, it meets the standard for, especially the low standard of the moving party, we'd have to meet, but I think even on a higher standard, plainly, without the lawsuit, without our bringing it. Yes. Could Langan Engineering have filed an initial suit for suing you for breach of contract? Not on these claims, no, Your Honor, because as we've noted, we're an excess carrier, and we attached $5.35 million. And nothing arose until, and the correspondence is actually in the record here, so you've got it, as far as Langan demanding payment for us, because settlements that had breached the primary layer had been communicated, but Langan wanted us to fund. And those are the two that are the basis for this counterclaim. So you said you would pay the claims. Did you actually pay the claims? You had a reservation of rights. Did you actually pay them? And, Your Honor, again, in the record, there is evidence confirming. So for the preserves or KB Holmes case, which got funded on October 7th, 2019, Markel funded its primary limit on October 7th, and RLI immediately wired its $2.7 million contribution that afternoon. So as an excess carrier, we were ready, willing, and able, and did indeed fund at the moment our funding was called for. So there was and is no breach of contract claim. As for Millennium Tower, you may or may not know that was a major piece of litigation in San Francisco with a lot of parties. And so there was a massive global settlement being negotiated. Langan approached us in July, so after this lawsuit had been filed, approached us and said, okay, we have an opportunity to contribute X towards the global settlement. It looks like the primary limits were going to be a little less than that based on the burn rate of defense fees. Will you agree to contribute the necessary amount up to what we anticipate? I think at that time it was $750,000. It ended up being a smaller number. And again, within a day or two, we reply and say, yes, we will do that under a reservation of rights. That case took a long time for the settlement with literally hundreds of parties, if I recall correctly, to get finalized, inked, good faith motions brought, side agreements inked. So that took a long time before I believe Markel may have ultimately paid its remaining limit sometime in the last quarter of last year, so over a year. And then we've been working out what excess amount is left on unpaid invoices. I believe those now have been paid also. So the answer is yes, we agreed to pay and we have paid on the two claims that are subject of this counterclaim, the first counterclaim for bad faith. And so they could not and did not plead a breach of contract claim for not paying those claims. As we've noted several times, we elected a judicial rescission process here. We are handling the claims as if these policies are in force and seeking the judicial remedy of rescission. And I don't know what a carrier can do that is more, I guess, appropriate as far as respecting not putting the insured in a spot. A carrier certainly has a self-help remedy available to it if it chooses when it wishes to rescind. That's been I've seen there's case law where carriers simply say we've been defrauded. Here's your return premium and we deny all claims. And that's not what happened here. We agreed to treat the policies as if in force, handle claims under them, under a reservation of rights and invoke a judicial process, an orderly process with the court. Described your suit and the counterclaim as two sides of the same coin. And I I don't think that's quite right, because I think for their side of the coin, which is our bringing a rescission and recruitment claim was was somehow malicious or in bad faith. They need to beat us first. And then that claim isn't a bad faith claim. It's a malicious prosecution claim down the road. Right. It's if I think and you may recall here, your honors, there was two counterclaims pled by Lincoln. There was one that is the bad faith counterclaim based on the preserves Redwood Shores case and the Millennium Tower case. And that's clearly specified in paragraph two of the counterclaim. Those are the two claims we're talking about on this counterclaim. And they pled the first 33 paragraphs of their counterclaim was their bad faith claim. They separately said there's a case or controversy between the parties about coverage for these actions, and therefore we seek declaratory judgment. Now, given that we had initiated a lawsuit for rescission and we had included a claim for declaratory judgment as well, obviously, we're not in a position. And nor did we to say there's not a dispute or claim or controversy as to coverage. So that's a distinct claim. And we did not direct the slap suit at that claim. We directed the slap suit at the bad faith counterclaim because the conduct they are identifying as our bad faith was to sue them for rescission and for recruitment. But you could have you could have not sued him. You could have just written a letter stating your position. Right. We could have if we wanted to take what I would call. And I don't mean to be flippant or use the wrong term, but almost a self-help approach. Had we had we simply asserted our rights under the contract in law, you are correct. One course of conduct a carrier can take in rescinding a policy is to send a letter with the return. If they had sued you, they could have sued you. And it would have been if you had written them a letter, they could have sued you as a plaintiff and alleged bad faith because of the letter. And so they don't they don't seem to be they don't seem to be the counterclaim doesn't seem to be based on the fact that you filed a lawsuit. The counterclaim seems to be because of what you did, whether they're right or wrong. That's how they're viewing it. Well, but the difference is, I think there is and must be a difference between taking the self-help approach and denying the claims and not not paying, in which case they have a breach of contract and a damages claim. Right. And paying under a reservation of rights while filing a judicial rescission action for judicial guidance and saying, if we win, we will get these monies back. So you're saying, yes, in a counterfactual world, had we taken the self-help approach and I would say not just rescinded the policies, but denied the claims on that basis as well. There's no question they would then have assuming Markel ultimately exhausted its primary policies, of course, and Langen ultimately paid any dollars, none of which had happened at the time. So if you prevail in the district court on the merits, doesn't that do doesn't that sort of answer their counterclaim? I mean, isn't that sort of the end of their counterclaim if you prevail on the merits? I assume that's the position you would like to take, isn't it? I think without a doubt. But but I mean, that's true. Had they counterclaimed, for instance, for malicious prosecution, that would be true also. And that's why courts don't allow counterclaims for malicious prosecution. You don't you don't get to adjudicate the propriety of our motives in bringing this case. This goes to this goes to your contractual relationship. There's quite a difference between the malicious prosecution and this one for breach of contract. But if you if you prevail on the merits, that pretty much dooms their counterclaim. If you lose on the merits, what what effect does that have on their counterclaim? Well, the counterclaim as pled not much because we are treating these policies as in force for current purposes. We are we look at cases like Progressive West and Old Republic that we cited where the carrier pays the loss and then sues for recruitment. That's not the basis for a bad faith claim. So the fact is, outside the pleadings, we are treating these policies as in force. And therefore, if we lose the rescission case, the policies are in force. And we, in fact, have been making the payments that we deem would be owed have had the policies been enforced. Right. So what's their counterclaim? Then their counterclaim were bad. I mean, assuming and again, I think even had it been less prosecution, you can't counterclaim the suit that's being brought against me is a bad or improper suit in the same lawsuit. But setting that aside, I guess we got phased and we lost our rescission case. Could they then go to a jury on some kind of damages theory to say our rescission case was a source of damage to them or a breach of the contract? Given that you've made the payments here and doesn't that go to the merits of their of their counterclaim? In what way, your honor? Well, where's where's the breach if you've made the payments? Well, I agree with that, which and there was no breach. Why don't you just fight this thing on the merits? I'm trying to figure out why we've got this or why we've got a side debate going on about slab when you can just take care of it on the merits and get the whole thing resolved. And we sort of saw this thing to a side, same coin. Let's just figure it out. We'll get it all worked out. And we are we are going forward on the merits and we do intend to win our rescission case. And I'm sure they intend to defend as vigorously as they have. The question the issue is because the presence of a bad faith claim in the case that is premised on our pleading. Increases the expense, transaction costs, hassle, harassment and nuisance value and everything else of the case, which is which is why they filed it. Increases it dramatically more than the prosecution of your case, plus the expense of filing the slap suit and bringing the appeal here. You know, it can be. I've certainly had cases where where parties have leveraged the existence of a bad faith claim into very broad discovery and discovery requests and the company practices and the management depositions into all sorts of things where what you're really saying here is you guys did us wrong by filing a lawsuit against us. And so what they're really getting at would all be essentially privileged from work product type information. The claim barred by the litigation privilege, as we pointed out, you really don't get to sue someone for suing you unless you can make out the very high standards and a later lawsuit for malicious prosecution. And so it is. It is, in fact, and it reminds me a little of the makeoff versus Trump University case that we talked about in the brief both sides a little bit where, I mean, you could sort of say, OK, if you know, if you if you went on the main claim, isn't Trump University's counterclaim no good? And the point that I think several of your colleagues made in a concurrence was the point of the counterclaim is to drive up the transaction costs and an expense on the plaintiff. And that is an interest that's protected by the slap laws. And so, yes, I mean, your honor, of course, you're right. If we went on the rescission case, there's no bad faith case. But setting that aside, win or lose on the rescission case, given what we've done here, we have not denied these claims. We have not rejected coverage. We've simply filed a lawsuit for judicial rescission. It's just not a proper counterclaim from day one. It is it is, we think, a slap. It is meant to punish us for exercising our First Amendment right of judicial access to the courts of filing a rescission claim. And if it's no different to a carrier and you're going to be accused of bad faith, whether you deny a claim outright or whether you pay under a reservation of rights and seek judicial guidance, what kind of law is that? We are out millions of dollars on this case where we think we've been defrauded. And if we don't win, we'll never see those millions of dollars again. If we win, we will. But as of right now, I don't know what a carrier who believes they've been defrauded in the application process can do other than what we've done. And it just is not proper for someone to say your lawsuit against us is an act of bad faith. That's that's simply not allowed. Litigation privilege, other slap laws, a whole lot of other reasons, as we pointed out, no breach of contract anyway, no economic loss, no economic detriment anyway. So there's a lot of reasons it's meritless. But I at the threshold, it's just it is it is, we think, an inappropriate, punitive slap at us for initiating a lawsuit. It is exactly what the slap laws are intended to apply to. And that's that's that's why, Your Honor, I don't I mean, you ask interesting questions, but it costs more to do this or do that. And I think, you know, you know, if you can if you can map it all out with knowledge, you might conclude that option A or option B was cheaper. But here there's it's really, I think, legally unviable and an affront to even have a counterclaim for bad faith in the case premised on a judicial filing. And that's that's that's, you know, obviously an argument we've made. And it just can't be that, you know, sitting here having having having the policies treated in force and and rescission action with judicial guidance pending that they can come back and say that's bad faith. And then that is indeed what they're saying. They're absent absent the lawsuit. Counsel Counsel, your time's expired. We'll give you a little bit of time for rebuttal. Fair enough. Yep. Okay. I'm happy to address any questions, obviously. Yeah, thank you. Thank you, Mr. Cardozo. Go ahead. Thank you, Judge Nelson. May it please the court. Ray Cardozo for the appellees, the Langen parties. Because the court's questions this morning were all focused on the merits, not its own jurisdiction. I want to start with the merits, but I do want to come back maybe a minute or two at the end. Touch on the jurisdiction point. And I want to start with the court's questions because they put their finger on exactly what is wrong with this slap theory. Judge Nelson, you asked, could this rescission have been effectuated just by writing a letter? Absolutely. It could have. And that ties right into the dispositive principle laid down by the California Supreme Court. That a cause of action does not arise from protective activity within the meaning of the slap statute merely because the wrongful act is carried out through a privileged communication. Instead, you have to look at the elements of the cause of action to find out what is the wrongful act that's being alleged. And only if it's the privileged communication itself do you meet prong one of the statute. If there's an underlying wrong alleged that is not the privileged communication itself, you don't. So in a cause of action for bad faith, the wrongful act that's alleged is the insurer did not deliver to its insured what the insured was owed under the policy. Counsel, would your would your client have filed a lawsuit absent R.L.I. filing filing their lawsuit? It very well may have your honor. And that goes to Judge Bybee's question as well. Langen could have sued even without this complaint. Remember, if you look at E.R. 166 to 168, which is the portion of the counterclaim that details all of the acts that are alleged to be bad faith. There's several things in there that could have been the basis of a lawsuit without R.L.I.'s complaint. Recall that the California courts have held that if you unreasonably delay in seeking rescission, if you wait and see how the loss plays out and then jump your insured after all, we see that this loss is turning unfavorable. There's a case called Haley that describes this process as post claims underwriting and points out that with the waiting, it's harmful to the insured because it prejudices the insurance rights. And think about it in this context, in this case, this success of liability theory before Langen had lost it could be described as a legal could have been described as a legal Hail Mary. If Langen knew it's insure, it's excess insurer was going to abandon it if it hadn't laid like a snake in the grass throughout this three year period, it might have tried to settle that claim earlier within its primary policy limits. Recall that the primary insurer met its obligations and defended and it paid the full policy limits unconditionally by waiting. Bring the rescission claim. That was an act of bad faith, and that preceded the filing of the complaint. Recall also that the California courts have clearly said that to assert a coverage position without conducting a reasonable investigation is bad, actionable, bad faith. That's alleged in the complaint. That isn't a cause of action. I have to say now I'm a little confused by your argument because you started off by saying that Langen could have sued without without R.L.I. filing its own lawsuit. OK, but now you've just told me that by waiting, by waiting until what R.L.I. engaged in bad faith by waiting to file its lawsuit. But that does that does tell me that the lawsuit was a critical was a critical component of what your of what your client knew. It's not waiting to file a lawsuit. It's waiting to announce the rescission decision. Langen thought it was covered. It's waiting to indicate that you've got some problem, some alleged misrepresentation. If you look at the Haley case, which is the one that recognizes this, that it's bad faith to sit on your rescission rights. It's the waiting and not communicating to the insured that they may have a coverage problem. It's not failure to communicate that you may have a coverage problem, which could have been done in a letter. It could have been done in a lawsuit. The lawsuit was not a necessary or essential part of that. But even if you look at the rescission claim in the complaint itself. Even that. Is not protected activity because the California courts have also held that an attempt to rescind, if it's unreasonable, that's bad faith. And I could give you a simple example that brings this home. Suppose you're a homeowner who's got all your life savings in your house and your house burns down in a fire. And you are in desperate financial states and your insured says, well, I'll cut you a check for what's owed under the policy. But over, by the way, we're going to file this judicial action for rescission and you won't find out if you actually get to keep the money until you've spent the money to defend the lawsuit. What you are owed under the policy and what Langen contains, it is owed under the policy. In this case is an unconditional payment of the policy benefits. Pay it unconditional without a reservation of right. That is clearly something that's superior to than being handed a check with a proviso that unless you win another lawsuit, you've got to give the check back. Those are two fundamentally different things. And Langen alleges they were entitled to the form. And remember also that the California Supreme Court has also held that if you have to incur legal expenses to security about policy benefits. That's a loss that is compensable in as damages for bad faith, which is the situation here. They could have funded this. My learned friend asked, what's the carrier to do? They could have funded that settlement without strings attached. They could have. And in that case, Langen would not have incurred the expense of the second lawsuit. Responding to their rescission claim, the expense of this appeal, it wouldn't have occurred. That's a loss compensable under the California Supreme Court's decision. The other point was my learned friend made. Well, if it's no difference to a carrier, if they pay it and reserve rights, why would a carrier do anything? Well, of course, it would have been more egregious. And RLI would fare much worse before a jury. If in Langen's point of heightened vulnerability, they just said pound sand and not paid or done anything and just let it hang in dry. So the fact that it instead conditionally funded the settlements. And then file this lawsuit, that will be a factor that the fact finder can consider in deciding whether this bad faith, whether bad faith, it'll be a factor in their favor. But the fact of filing the complaint alone does not immunize them from the bad faith claim. Because think about if that were the rule, what that would mean. Every insurer would announce every coverage decision in a complaint rather than via letter to immunize themselves from the tort. But the California Supreme Court created the tort of bad faith out of recognition of the special relationship and the fact that the insurance uniquely vulnerable when these losses occur. So if they're sure it doesn't step up and does not step up unconditionally. They're running a risk of being liable, not just for breach of contract, but also for tort damages. They want to take that extra risk out of play simply by filing a rescission lawsuit. But that's clearly contrary to California law. Which leads to sort of two conclusions. First of all, the district court's decision on prong one is spot on. As Judge Ivey noted, it is the flip side of the same dispute. They're saying, oh, it's perfectly reasonable what we did. We funded the settlement. All we're doing is asking a court to decide if we can rescind. We're not harming you. We're going through that process. We have a different take on that situation. We say we were owed that settlement funding unconditionally. And to bring up a rescission claim when you've got no facts to support it. You failed to conduct a reasonable investigation. And you used it to leverage your insured at these high-pressure, vulnerable motions of settlement negotiations. That is unreasonable and bad faith. And Judge Ivey, as you correctly pointed out, whoever wins on that issue is going to resolve the whole case. If they win and they rescind, that's going to get rid of the bad faith claim. But they don't get to kick it out on the front end on a slap motion like this. It's for the fact finder. I think we understand your position. I realize that the court's views on jurisdiction turn a lot on whether it thinks that horse has left the barn or not. So let me just ask the court, are you open to the issue? Should I make a few comments? Because I'm chomping at the bit on that subject. There's just a couple of points I'd like to make. How do you get around McKeith? We're bound by that. If you want to come back and press the question on Bonk. But I don't see how you get around our prior decisions. Sure. So let me just leave you with this thought on that precise point. If you look at the three decisions of Batzel, McKeith, and then the most recent decision in Hyen. You'll see two things. Hyen and Batzel bookend the issue. Batzel says when a defendant loses one of these motions of strike, they can appeal. Hyen says when a plaintiff loses, they can't. McKeith, Trump, the only one that's on the in-between situation, a plaintiff counter defended this situation. But they didn't discuss the critical point, which is the immunity from suit rationale, which gets you in the door in the first place. The only case that discusses that critical immunity from suit rationale is Hyen, which postdates Trump. And so if you've got a decision from the court that doesn't discuss the critical issue and then a subsequent decision from the court that, while not as on point, does discuss the logic and reasoning. To bind the entire circuit to a decision in which the issue wasn't even raised and not discussed in an opinion and require it to only be raised in a rehearing en banc. I don't think that's how this court's interpretation of its controlling precedence and discretion works. I think that works if you've got a decision that actually examined the issue. But I don't think it works when the decision did examine the issue. And then you have a subsequent panel decision that calls. Let me take you in a different direction, irrespective as to whether our panel has whether we have previously decided this question and it's resolved. And our panel cannot cannot disagree with a prior panel on the merits of the jurisdiction. I just don't I just don't see. I just don't see the equities. I mean, I just I just I just don't see the reasoning for for the jurisdictional argument that you're making irrespective, even if we're writing on a blank slate. OK, well, that's a different problem, but I'll just again, I'll just finish off with these two two thoughts. The rationale that it's effectively unreviewable on appeal from a final judgment only works if the interest being asserted is an immunity from suit. Your question earlier, Judge Biby, if does it does it your own claim? The counterclaim was all going to be decided together, determined in the wash. That tells you that this issue. Cannot possibly be an immunity from suit. There's no reason for this court to be spending to intervene, intervening at this time. The immunity from suit rationale simply doesn't work in this procedural context. The other issue, the second prong of the collateral order doctrine is the issue must be completely the U.S. Supreme Court's language is completely separate from the merits. How can you possibly say that when prong two of the slap analysis is a merits based analysis? You can't meet that requirement. So if this court were to take a fresh look at that jurisdiction issue. I think it's a very, very hard sell for our ally, but I don't think you're bound by precedent either. And if I could just say one thing about the prong to analysis. This is the biggest within the whole case by our ally. Speaking of binding precedent of this court, planned parenthood makes clear that in a situation like this, when no discovery is heard. The prong to analysis is simply a determination of whether the complaint meets a 12 B6 standard. Which means under rule 12 B6, you have to be able to knock out the entire cause of action on the pleadings. Rule 12 B6 doesn't permit slicing and dicing of the claim. As I've already talked about this morning, several of the acts of bad faith allege that ER 166 to 168 occurred before the complaint was even filed. There is no possibility they could meet the planned parenthood standard on prong two. Your time's now expired, and I think we have your argument. Thank you. Mr. Pro, we'll give you two minutes for rebuttal. Thank you, Your Honor. First, on the question of, I guess, hypothetically, because that's not what happened. But had we not filed a lawsuit for rescission, could Langen have nevertheless sued us for breach of contract or bad faith? Because we reserved our rights to recoupment. Plainly not. There is a California appellate authority, including we cited both the Pritchard case and the Fuller-Austin insulation case, that a reservation of rights is not a breach of contract or a breach of any legal duty. In fact, under the Supreme Court authority, we cited Philadelphia indemnity involving rescission and Blue Ridge versus adjacent for settlement payments and bus on defense payments. The Supreme Court encourages a carrier with the disputed claim to pay the claim while reserving rights. So the reservation of rights alone is no breach of contract, is no bad faith, is no legal claim. Second is with respect to the fact that Langen is incurring costs to defend against the rescission count and the recovery of money. Well, that very much tracks Progressive West, a case we discussed at length, and Langen simply failed to discuss because they have no answer to it. Old Republic is another insurance case where the carrier paid the claim, alleged fraud, and sued to get it back, and the Court of Appeal dismissed the counterclaim under the litigation privilege. And because there was no economic detriment supporting bad faith. So this issue has been briefed at some length, but plainly reserving your rights and even initiating an action to recover your payments is not actionable bad faith under settled California law. Counsel, yeah, we appreciate it. You've done a great job. Both counsel have done a great job. We have your argument, and I think that ends the oral argument today, and we've also got your briefs, so thank you. So the case is now submitted, and we will move on to the final case set for argument this morning. J. Bertolette, Inc. vs. Robert Bosch, LLC, case number 20-15034.
judges: Schroeder, Bybee, Nelson